IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ADAM BLAKE PERRITT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:21-cv-146 |
| | § | |
| GREGG ORR AUTO COLLECTION, | § | |
| INC. AND CPI INSURANCE | § | |
| COMPANY A/K/A COBRA | § | |
| PROFESSIONAL, INC. | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Plaintiff, complaining of Defendants Gregg Orr Auto Collections, Inc. ("Orr") and CPI Insurance Company, Inc and would show as follows:

**I.**

**PARTIES**

1  Plaintiff is an individual residing in Shreveport Louisiana and may be contacted through the undersigned counsel.

2  Defendant Gregg Orr Auto Collection, Inc. ("Orr") is a domestic For-Profit Corporation with its primary place of business at 400 Spur 63, Longview Texas, and its principal office at 4333 Mall Drive, Texarkana, TX 75503. Defendant's principal business is the sale of new and used cars through its auto dealerships in Texas and Louisiana. Orr may be served with process through its registered agent Nicole A. Stover at 4333 Mall Drive, Texarkana, Texas 75503, or wherever found.

3. Defendant CPI Insurance Company, also known as Cobra Professional, Inc. ("CPI") is an insurance benefits administrator. At all times relevant herein CPI administered Defendant Orr's employee health insurance plan through Blue Cross/Blue Shield. CPI maintains offices in Baton Rouge, Louisiana at 6421 Perkins Road, Building A, Suite 2A, Baton Rouge, LA, 70808 and in Austin, Texas at 15511 Hwy 71, Suite 110-560, Austin, Texas 78738. CPI's Louisiana Registered Agent is Thomas Besselman Jr., located at 6421 Perkins Road, Building A, Suite 1A, Baton Rouge, LA 70808. CPI may be served through its registered agent, or wherever found.

## II.

## JURISDICTION

4. This Court has federal question jurisdiction over this suit under 28 U.S.C. §1331, as it asserts claims under the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. §1161 et seq. ("COBRA") This Court also has supplemental jurisdiction under 28 U.S.C. §1367, insofar as it asserts one or more claims under state law for breach of contract, fraud and breach of fiduciary duty and under Employee Retirement Income Security Act of 1974, **§** 510, 29 U.S.C. § 1140. ERISA.

5. Venue is proper under 28 U.S.C. §1391(b) because Defendant transacts business in this District and Division and the acts and omissions on which this action is based occurred in this District and Division.

## III.

## FACTUAL STATEMENTS

6. On October 1, 2019 Defendant hired Plaintiff to serve as its Used Car Sales Manager at a salary of $5,000 per month, plus 4% commission, which amounted to

approximately $16,000 per month in 2020.

7. As soon as Plaintiff became eligible, Plaintiff applied for Defendant's medical benefit program, and Plaintiff enrolled himself, his wife and his children in the Defendant's health insurance plan with Blue Cross/Blue Shield ("BCBS").

8. Plaintiff's Health plan is governed by ERISA.

9. At all times relevant herein, Defendant Orr retained Defendant CPI to assist with the administration of its health insurance plan.

10. When Plaintiff enrolled in the Defendant's BCBS Health Plan (the "Plan"), Defendant's Human Resources ("HR") Manager Pamela Baker ("Baker") specifically warned Plaintiff against making too many medical claims under Defendant's Plan. Baker threatened Plaintiff with termination if he submitted too many claims under the Plan. Chris Franklin ("Franklin"), Defendant's Corporate HR Manager, told Plaintiff that she would "fire his ass" if Plaintiff over utilized the BCBS insurance coverage.

11. Plaintiff's wife, Cassidy, had a serious pre-existing medical condition. Specifically, Plaintiff's wife had Lupus and also badly needed a hip replacement. Cassidy also suffered from recurring infections and flare ups of her Lupus symptoms. Plaintiff had previously enrolled Cassidy in a private insurance plan but converted her coverage to Defendant's health insurance coverage because it was less costly.

12. Plaintiff submitted several claims that were directly related to his wife's medical conditions and were covered under Defendant' ERISA governed Plan.

13. On March 31, 2020, Defendant summarily terminated Plaintiff's employment. Defendant's pretextual stated reason for Plaintiff's termination was that the Defendant was going down to only two managers and that Plaintiff was not liked by his co-workers.

14. Prior to his termination, Plaintiff had not received any disciplinary action or warnings regarding his job performance, or of his ability to get along with coworkers. Furthermore, Plaintiff was more than capable of performing either of the two remaining managerial positions.

15. Defendant terminated Plaintiff's employment because Plaintiff had availed himself and his family of the Defendant's health insurance coverage and in particular, for its use for his wife's medical conditions. Defendant's true intent was to prevent Plaintiff from obtaining benefits under Defendant's Health Plan.

16. Plaintiff was immediately replaced by Justin Lawrence, who had been Defendant's Assistant Used Car Manager. Plaintiff was completely qualified to perform this function.

17. After he was notified of his termination, Plaintiff attended an exit interview with Defendant's HR Manager Baker. During the interview, Plaintiff specifically requested information from Baker about how he could maintain his current health insurance coverage under COBRA. Despite his repeated requests, Baker refused to provide Plaintiff with the information or forms to allow him to elect to continue health insurance coverage under Defendant's Plan through COBRA.

18 In fact, no one from Defendant's organization or CPI provided Plaintiff with the necessary notification and forms that would have allowed Plaintiff to timely elect to remain under the Defendant's Plan through COBRA.

19. Plaintiff also contacted Defendant Orr's General Manager Jacob Poole ("Poole"). Poole had the authority to contact the corporate office and obtain the necessary information and

documentation to advise Plaintiff about his election rights to continue his family's health insurance under COBRA, but never got back to Plaintiff with this information or documentation.

20. Plaintiff also spoke to Baker about getting continued coverage under COBRA. Baker simply replied, "You're not going to get coverage."

21. Defendants never provided Plaintiff with any information about his election rights to continue health insurance coverage for himself and his family under COBRA. Plaintiff was also never informed of Defendant CPI, or its role as the benefits administrator for Defendant Orr.

22. As a result of Defendants' failure to provide Plaintiff with the required statutory notice of his election rights to continue his health insurance coverage under COBRA, Plaintiff's insurance coverage lapsed. Plaintiff and his family were without medical health insurance until he secured alternative employment and became eligible for health and medical coverage under his new employer's medical health plan.

23. Following his termination, Plaintiff incurred medical bills in the amount of $171,000.00 while caring for his wife. Due to his inability to pay these bills and the lack of insurance coverage, his credit rating was severely impaired.

24. At the time of his termination, Plaintiff's wife was receiving special medical treatment by specialists for Lupus. These treatments and the specialists who administer them are very costly. The specialists who administered Mrs. Perritt's treatment only see patients covered by a PPO plan, which Plaintiff had through his employment with Defendant Orr. Once Plaintiff's insurance was cancelled, Plaintiff's wife's treatments immediately stopped due to lack of insurance coverage. Thereafter, Plaintiff was could only obtain HMO coverage, which the specialists who administered his wife's treatment did not accept and would not honor.

25. The timing of Plaintiff's termination and abrupt loss of PPO insurance coverage caused further tragic damages to Plaintiff and his children. Plaintiff's spouse's medical condition was well known among the employees and management at Orr. The regular treatments covered by the PPO Plan were imperative for the upcoming hip surgery that had been scheduled prior to Plaintiff's termination.

26 The sudden cessation of these treatments significantly increased the risk of infection. Mrs. Perritt repeatedly requested these treatments, but Plaintiff could not obtain similar coverage for them and the specialists would no longer provide these treatments without insurance coverage unless paid in cash.

27. The costs of administering these treatments would have been covered by Defendant's Plan had Plaintiff been allowed to continue his insurance coverage through COBRA.

28. During the period of March 31, 2020 through August 20, 2020, Plaintiff's wife remained seriously ill. Because of her medical condition and without the continuing treatments, Plaintiff's wife's scheduled hip surgery would require a lengthy post-op convalescence in the hospital. Her doctor told her that she could not bear any weight on her hip for up to two months following her surgery and would remain in the hospital for an uncertain amount of time, depending on the progress of her recovery.

29. Defendant, Orr was aware of Plaintiff's wife's poor health and her need for surgery when it terminated Plaintiff's employment. Plaintiff continued to request information regarding the continuation of his COBRA coverage through Baker and corporate HR representative Chris Franklin ("Franklin"). Neither Franklin nor Baker responded to Plaintiff's requests or provided him with the proper notice of his COBRA election rights for continued

health insurance coverage.

30. Plaintiff's wife had her necessary, scheduled hip surgery shortly after Defendant terminated Plaintiff's employment. Following the surgery, Plaintiff's wife suffered further complications, including inflammation, due to her Lupus condition.

31. Without medical insurance, Plaintiff could not afford to continue the necessary medical treatment for his wife. Plaintiff had exhausted his financial resources and savings to pay for escalating medical bills that continued to accrue following Plaintiff's termination.

32. Plaintiff's wife's condition continued to deteriorate, but Plaintiff could not afford the required medical treatment. As a result of these untreated complications, Plaintiff's wife sustained a condition known as Takotsubo Cardiomyopathy. This condition caused her heart to stop on August 12, 2020. Plaintiff's wife passed away on August 19, 2020.

33. Between March 31, 2020 and August 19, 2020, Plaintiff incurred medical expenses that would otherwise have been covered under Defendant's health insurance plan. Plaintiff's uncovered expenses, the financial inability to provide proper medical care for his wife, and her premature passing are the direct consequence of Defendants' failure to provide Plaintiff timely notice of his COBRA election rights. Plaintiff would have remained enrolled in the Defendant's PPO health insurance plan, which would have covered his wife's medical treatment had he been properly served with his COBRA election rights.

## VI.

## **CAUSES OF ACTION**

### **Count One**
### **As to Defendant Orr Automotive Group**

### **Violation of Section 510 ERISA**

34. Plaintiff repeats and incorporates the previous allegations as though fully set

forth.

35. **ERISA § 510**, **29 U.S.C. § 1140** provides:

"It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... *or for the purpose of interfering with the attainment \*143 of any right to which such participant may become entitled* under the plan
.

36. By its terms, §510 protects plan participants from termination motivated by an employer's desire to prevent a health plan from vesting.

37. Defendant Orr's health insurance plan is an ERISA governed plan and therefore subject to the provisions of 29 U.S.C. s 1140.

38. Defendant knowingly and deliberately terminated Plaintiff's employment to reduce the number of its Plan costs of claims, and withheld COBRA information from Plaintiff in order to prevent Plaintiff from exercising his rights under Defendant's health care plan to present good faith medical claims for coverage under Orr's Plan. .

39. Defendant's actions were in direct violation of Section 510 of ERISA. Plaintiff therefore seeks reinstatement to his former position or in the alternative lost wages in lieu of reinstatement, reinstatement of his health plan, all costs expended for the time period he was denied COBRA coverage, attorneys' fees, and all other relief to which he is entitled under Section 510 of ERISA, 29 U.S.C. s. 1140.

## Count 2

### As to Both Defendants

### Violation of 29 U.S.C. §1161 et Seq. COBRA

40. Plaintiff repeats and incorporates the previous allegations as though fully set forth herein.

41. Plaintiff was an employee who was terminated from his employment and at the time of his termination had medical coverage under the Defendant's group health Plan. Defendant Orr and CPI jointly administrated the employer's health Plan.

42. Plaintiff made regular premium payments through Orr, which went to the Plan Administrator, to ensure continued medical coverage following his termination of employment.

43. Defendants breached their statutory duty to provide Plaintiff with the required and timely notice of his COBRA election rights to continue health insurance coverage following the termination of his employment with Defendant Orr.

44. As a result of such acts and omissions, Defendants knowingly failed to provide Plaintiff with a notice of his COBRA election rights and caused Plaintiff and his family to lose coverage. Such conduct constitutes a willful violation of 29 USC 1161-1166.

45. Plaintiff is entitled to recover the amount of all medical expenses that would have been covered under the Defendant's health Plan had Plaintiff remained enrolled in the same.

46. Plaintiff is also entitled to recover reasonable attorney's fees, costs, interest and punitive damages and/or a penalty to be imposed by the Court for Defendant's conduct.

47. Plaintiff is also entitled to damages related to the untimely death of his wife due to the lack of treatment which is the direct result of her not receiving the medical treatment she needed due to the lack of insurance coverage. These damages include, but are not limited to, the loss of her income as a Registered Nurse, her services and value as a homemaker and mother to two pre-teenage daughters, and Plaintiff's loss of consortium, in general.

48 Plaintiff demands a trial by jury.

## V.

## **PRAYER**

Wherefore Premises Considered, Plaintiff spectrally prays that this Court:

1. Enter judgment against Defendants for actual, compensatory, and consequential damages;

2. Enter judgment against Defendants for exemplary damages;

3. Award reasonable attorney's fees incurred in the prosecution of this case;

4. Award prejudgment and post-judgment interest at the highest allowed rate;

5. Impose a penalty on both Defendants for their acts and omissions;

6. Grant other relief as this Court finds just and equitable;

        Respectfully submitted,

        /s/ *Nicholas A. O'Kelly* .
        Nicholas A. O'Kelly
        State Bar No. 15241235
        nao@kilgorelaw.com
        214-379-0827
        214-953-0133 (fax)
        nao@kilgorelaw.com

        Clark B. Will, P.C.
        State Bar No. 21502500
        cbw@kilgorelaw.com
        214-379-0834
        214-953-0133 (fax)

        Kilgore & Kilgore, PLLC
        3109 Carlisle Street
        Dallas, Texas 75204

        **ATTORNEYS FOR PLAINTIFF**
        **ADAM PERRITT**